UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| PAUL BATSCHE; SCOTT GALE; JEFF HUBERTY; DOUG JONES; MAGGY KOTTMAN; GARY THADEN; MICHAEL TIEVA; and TOM VAIL, as Trustees of the Twin City Pipe Trades Welfare Fund, | Case No. 15-CV-0053 (PJS/BRT) |
| Plaintiffs, | ORDER |
| v. | |
| SYLVIA MATHEWS BURWELL, in her official capacity as Secretary for the United States Department of Health and Human Services, | |
| Defendant. | |

William A. Cumming and Laura H. Lindsay, HESSIAN & MCKASY P.A., for plaintiffs.

Megan A. Crowley, UNITED STATES DEPARTMENT OF JUSTICE, for defendant.

This matter is before the Court on the motion of defendant Sylvia Mathews Burwell (sued in her official capacity as Secretary for the United States Department of Health and Human Services ("Department")) to dismiss this action for lack of subject-matter jurisdiction.  For the reasons that follow, the Court grants the motion.

I.  BACKGROUND

Section 1341(b)(1)(A) of the Patient Protection and Affordable Care Act (the "ACA") requires "health insurance issuers, and third party administrators on behalf of group health plans" to pay a fee to the federal government.  42 U.S.C. § 18061(b)(1)(A).  That fee is known as the "Transitional Reinsurance Fee"—or, less formally, as the "reinsurance fee" or "reinsurance contribution"—and it funds the "Transitional Reinsurance Program."  ECF No. 22 ¶¶ 8-9.  As its name suggests, the fee is temporary; it is assessed only for the years 2014, 2015, and 2016.  42 U.S.C. § 18061(b)(1)(A) ("health insurance issuers, and third party administrators on behalf of group health plans, are required to make payments to an applicable reinsurance entity for any plan year beginning in the 3-year period beginning January 1, 2014").

After enactment of the ACA in 2010, a controversy arose over whether self-insured/self-administered group-health plans ("SI/SA plans")—that is, group-health plans that do not use third-party administrators—would have to pay the reinsurance fee.  In March 2013, the Department promulgated a rule that provided that SI/SA plans would have to pay the fee.  78 Fed. Reg. 15410, 15525 (Mar. 11, 2013) (codified at 45 C.F.R. § 153.20).[1]  A year later, the Department changed its mind and promulgated a rule that provided that SI/SA plans would not have to pay the fee.  79 Fed. Reg. 13744,

---

[1]The Department identifies those required to pay the reinsurance fee in its definition of the term "contributing entity."

13834 (Mar. 11, 2014) (codified at 45 C.F.R. § 153.20).  There was an important catch, though:  The Department decided that its new interpretation would apply only to benefit years 2015 and 2016, while its original interpretation would remain in effect for benefit year 2014.  *Id.*

Plaintiffs are Trustees of the Twin City Pipe Trades Welfare Fund ("Fund"), which operates an SI/SA plan.  The Trustees filed this lawsuit on January 9, 2015, seeking to enjoin the Department from collecting the 2014 reinsurance fee from the Fund.  ECF No. 1.[2]  (That fee was due on January 15, 2015.)  At the time that they sued, the Trustees knew that, under the Department's new interpretation, the Fund would not be assessed a reinsurance fee for 2015 or 2016; thus the Trustees sought only to enjoin assessment of the reinsurance fee for 2014.  What the trustees did not realize, however, is that the Fund had already paid the $762,663.90 reinsurance fee for 2014.  That fee was "inadvertently" paid by the Fund on December 15, 2014.[3]  ECF No. 22 ¶ 37.

After learning that the Fund had already paid the 2014 reinsurance fee, the trustees filed an amended complaint on February 11, 2015.  ECF No. 22.  The amended

---

[2]The case was initially assigned to Judge Ann D. Montgomery, who promptly recused.  ECF No. 4.  The case was then assigned to Judge Michael J. Davis, who heard and ruled on the Trustees' motion for a preliminary injunction.  ECF No. 21.  Nine months later, Judge Davis recused, ECF No. 33, and the case was assigned to the undersigned.

[3]Elsewhere in the amended complaint, the Trustees state that they paid $762,633.90.  ECF No. 22 ¶ 23.

complaint asked the Court to declare that the Fund was not required to "submit a Transitional Reinsurance Fee for benefit year 2014" and that the Fund was "entitled to reimbursement of its mistaken payment to the Department . . . ." *Id.* at 13. The amended complaint also asked the Court to enter "a judgment against the Defendant in the amount of $762,663.90." *Id.*

Not long after the amended complaint was filed, the parties filed cross-motions for summary judgment. ECF Nos. 35, 45. None of the briefs filed by the parties raised any question regarding the Court's jurisdiction. The Court had its doubts, however, and planned to raise the issue at the hearing on the summary-judgment motions. But the Court's questions were preempted when, at the beginning of the hearing, the attorney for the Department informed the Court that she had belatedly realized that this Court did not have subject-matter jurisdiction. The Court proceeded to hear the parties' arguments regarding the merits and ordered the parties to submit post-hearing briefs regarding jurisdiction. ECF No. 58.

## II. ANALYSIS

The jurisdictional dispute is a narrow one. The parties agree that the Department enjoys sovereign immunity and that, unless Congress has expressly waived that sovereign immunity, this lawsuit must be dismissed. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). In their amended complaint, the Trustees do not mention sovereign immunity,

much less identify a statutory waiver.  In their brief, however, the Trustees rely on § 702 of the Administrative Procedure Act ("APA"), which provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.   An action in a court of the United States seeking relief other than money damages . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . .

5 U.S.C. § 702.

The parties agree that, as a general matter, § 702 waives sovereign immunity for lawsuits that seek to challenge final agency action.  *See Raz v. Lee*, 343 F.3d 936, 938 (8th Cir. 2003) ("[S]ection 702 of the Administrative Procedure Act (APA) expressly waives sovereign immunity as to any action for nonmonetary relief brought against the United States.").  The parties also agree that this waiver is limited in an important way:  Section 702 waives sovereign immunity only for a lawsuit "seeking relief other than money damages."  Thus, a plaintiff who seeks "money damages" from the United States cannot rely on § 702 as a waiver of sovereign immunity.

The parties further agree that, in deciding whether this lawsuit seeks "money damages" from the United States, the Court must focus on "the true nature of the action." *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994).  It is easy to disguise an action for money damages as one for declaratory relief (the plaintiff simply asks the

court to declare that the defendant owes her money) or as one for injunctive relief (the plaintiff simply asks the court to enter an injunction forcing the defendant to pay her money). Thus, a court "must look beyond the facial allegations of the complaint to determine the true nature of th[e] suit." *Sellers v. Brown*, 633 F.2d 106, 108 (8th Cir. 1980); *see also Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 480 F.3d 1116, 1124 (Fed. Cir. 2007) ("[I]n determining whether a plaintiff's suit is to be heard in district court or the Court of Federal Claims, we must look beyond the form of the pleadings to the substance of the claim.").

The only thing that the parties do not agree upon is the "true nature" of this lawsuit. The Department argues that "it is patently clear that Plaintiffs' true object is the recovery of money from the government." ECF No. 62 at 2. But the Trustees insist that their pursuit of declaratory relief is the "essence" [ECF No. 60 at 2] and "central purpose" [*id.* at 8] of their lawsuit. Their pursuit of a $762,663.90 money judgment is, in the words of the Trustees, merely an "incidental . . . by-product" [*id.* at 8-9] or "incidental consequence" [*id.* at 11] of declaratory relief. According to the Trustees:

> Plaintiffs first and foremost seek review of an agency action and a declaration that the Department's rule for 2014 with respect to the Transitional Reinsurance Program is arbitrary and capricious. This declaration is a prerequisite to any other relief that could be afforded to Plaintiffs, including any reimbursement of fees paid.

*Id.* at 5.

The Court disagrees. The Trustees confuse two distinct things: (1) a *determination* that the Department acted unlawfully, which is indeed a "prerequisite" to affording monetary relief, and (2) a *declaratory judgment* that the Department acted unlawfully, which is unnecessary and inconsequential. Every year, federal courts enter thousands of money judgments in favor of plaintiffs who have been injured by the unlawful conduct of defendants. Before entering those money judgments, the courts must, of course, make certain factual or legal *determinations*. But courts almost never make formal *declarations* before entering money judgments. Rather, declaratory judgments are issued only in cases in which monetary relief will not make the plaintiff whole—in particular, in cases in which plaintiffs are threatened with future harm that can be avoided only through declaratory or injunctive relief.

Take, for example, a typical automobile-accident case. Before the plaintiff in such a case can recover money damages, a court or a jury must find that the defendant owed a duty to the plaintiff, that the defendant breached that duty, that the plaintiff suffered harm, and that the defendant's breach was the proximate cause of the plaintiff's harm. *See, e.g.*, *Bjerke v. Johnson*, 742 N.W.2d 660, 664 (Minn. 2007) ("The basic elements of a negligence claim are: (1) existence of a duty of care; (2) breach of that duty; (3) proximate causation; and (4) injury."). These are *determinations* that must be made before a money judgment can be entered.

Because these determinations must be made in every automobile-accident case, any plaintiff suing to recover damages for injuries suffered in an automobile accident could easily add a demand for declaratory relief to her demand for money damages. For example, the plaintiff could ask for a declaration that the defendant owed a duty to her, another declaration that the defendant breached that duty by failing to use reasonable care while driving, another declaration that the plaintiff suffered harm in the amount of $100,000, and another declaration that the defendant's breach caused the plaintiff's harm.

But no plaintiff ever seeks—and no court ever grants—declaratory relief of this nature because such declaratory relief would be utterly superfluous. The court does not need to grant any type of declaratory relief in order to enter a money judgment against the defendant. Moreover, any declaratory relief would have no value to the plaintiff. A plaintiff in an automobile-accident case is not threatened with future harm; she has been injured by a one-time occurrence. And money damages will make the plaintiff whole. Indeed, once the plaintiff receives those damages, there will be no injury left to remedy through declaratory, injunctive, or any other kind of equitable relief.

Precisely the same is true in this case. The Trustees claim that the Department acted unlawfully in collecting the 2014 reinsurance fee from the Fund. The Fund is not at risk of future harm, as the Fund was not assessed a reinsurance fee for 2015 or 2016,

and the Transitional Reinsurance Program will expire at the end of 2016.  A money judgment will—in and of itself—make the Fund whole.  Once the Fund collects $762,663.90 from the Department, there will be no injury left to remedy—with declaratory, injunctive, or any other kind of equitable relief.[4]  And the Court does not have to award any kind of declaratory relief in order to enter a money judgment against the Department.

In sum, if this Court were to enter only the money judgment sought by the Trustees in their amended complaint—"a judgment against the Defendant in the amount of $762,663.90," ECF No. 22 at 13—the Trustees would be made whole.  But if this Court were to enter only the declaratory judgment sought by the Trustees in their amended complaint—an order "declaring that self-insured/self-administered plans are exempted from . . . the requirement that they submit a Transitional Reinsurance Fee for benefit year 2014" and "declaring that the Plan is entitled to reimbursement of its mistaken payment to the Department," *id.*—the Trustees would *not* be made whole.  They would still be suffering an injury that could be remedied only through entry of a

---

[4]Indeed, if the Department had voluntarily reimbursed the Fund shortly after collecting the 2014 reinsurance fee, the Trustees would not even have *standing* under Article III to bring an action seeking declaratory relief, as the dispute would be moot.  *See Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) ("A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam) (some internal quotation marks omitted in original)).

money judgment in the amount of $762,663.90. Clearly, then, the "true nature" of this lawsuit is a claim for money damages.

The Trustees rely heavily on *Bowen v. Massachusetts*, 487 U.S. 879 (1988), but *Bowen* is easily distinguishable. In *Bowen*, the Department had decided that states were not entitled to reimbursement under the Medicaid program for the cost of certain services provided to the mentally disabled. The State of Massachusetts sued, seeking monetary, injunctive, and declaratory relief. At bottom, Massachusetts sought two things: reimbursement for the cost of services that it had provided in the past, and an order forcing the Department to reimburse it for the cost of services that it would provide in the future. The Supreme Court held that, for purposes of § 702 of the APA, the lawsuit was "[a]n action in a court of the United States seeking relief other than money damages." 487 U.S. at 893-901.

*Bowen* does not help the Trustees, however, because this lawsuit differs from the lawsuit in *Bowen* in two significant ways:

First, in this case, the Trustees seek purely retroactive relief. In *Bowen*, however, Massachusetts sought substantial *prospective* relief—specifically, an order forcing the Department to reimburse the cost of the services *going forward.* That prospective relief was undoubtedly of much greater value to Massachusetts than the reimbursement of the cost of past services. *Cf. Minn. ex rel. Noot v. Heckler*, 718 F.2d 852, 859 (8th Cir. 1983)

("The potential current and future claims . . . dwarf the amount of the disallowance the State seeks to have overturned.").

Second, even the *retroactive* relief that Massachusetts sought was, according to the Supreme Court, "not 'money damages' as that term is used in the law." *Bowen*, 487 U.S. at 893. The Supreme Court explained:

> "[The State] is seeking funds to which a statute allegedly entitles it, rather than money in compensation for the losses, whatever they may be, that [the State] will suffer or has suffered by virtue of the withholding of those funds. If the program in this case involved in-kind benefits this would be altogether evident. The fact that in the present case it is money rather than in-kind benefits that pass from the federal government to the states (and then, in the form of services, to program beneficiaries) cannot transform the nature of the relief sought—specific relief, not relief in the form of damages."

*Id.* at 901 (quoting *Md. Dep't of Human Res. v. Dep't of Health and Human Servs.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985)).

Here, by contrast, the Trustees are not suing to recover some kind of "benefit"—either monetary or in-kind—to which the Fund is "entitle[d]" under the ACA. The Fund is not entitled to *anything* under the ACA.[5] Rather, the Trustees are suing to recover "money in compensation for the losses" that the Fund suffered when the

---

[5] In fact, as the Trustees concede in their amended complaint, the ACA does not even provide the Trustees with a procedural mechanism to recover a mistakenly paid reimbursement fee. ECF No. 22 ¶ 34 ("there is no mechanism in the statute for recovery of erroneously paid fees").

Department allegedly exceeded its legal authority by assessing a reimbursement fee for 2014.[6]

For these reasons, the Court concludes that this lawsuit does not in substance seek "relief other than money damages," and thus the waiver of sovereign immunity found in § 702 of the APA does not apply. The Trustees do not argue that any other statute waives sovereign immunity for their claim. Therefore, this lawsuit must be dismissed for lack of subject-matter jurisdiction.

---

[6] What Judge Thelton E. Henderson said in *Bautista-Perez v. Mukasey* is true about this case:

> This case is not like *Bowen* . . . , where a statute created an obligation to pay the plaintiff specific amounts of money. The complaint does not allege, as in other cases following *Bowen*, that [8 U.S.C.] § 1254a(c)(1)(B) "entitles a claimant to a specific amount of money, and an administrative agency wrongfully withh[eld] that money from the claimant," so that a claim under the APA would be appropriate. *Marceau v. Blackfeet Housing Authority*, 455 F.3d 974, 986 (9th Cir. 2006).
>
> Instead, this case falls squarely within a category of cases typically brought under the Tucker Act—claims for "recovery of monies that the government has required to be paid contrary to law," called "illegal exaction" claims. *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996).

No. C 07-4192 TEH, 2008 WL 314486, at *4-5 (N.D. Cal. Feb. 4, 2008).

One final matter: Even if the Trustees could identify a waiver of sovereign immunity, the Tucker Act would vest exclusive jurisdiction over this lawsuit in the United States Court of Federal Claims. 28 U.S.C. § 1491(a)(1); *Noot*, 718 F.2d at 857 ("The exclusive jurisdiction of the [Court of Federal Claims] applies to monetary claims in excess of $10,000 against the United States and its agencies."). The Trustees argue to the contrary, but their argument is simply a rehash of their argument that their claim is fundamentally for declaratory relief (which the Court of Federal Claims generally cannot provide) rather than for money damages (which the Court of Federal Claims generally can provide[7]). As the Court has already explained, the declaratory relief sought by the Trustees does not have "significant prospective effect or considerable value apart from merely determining monetary liability of the government . . . ." *Noot*, 718 F.2d at 858. The harm suffered by the Trustees will be entirely redressed by a money judgment, and the Trustees need not obtain any declaratory relief in order to

---

[7]There is little doubt that *if* the Trustees could identify a waiver of sovereign immunity that applied to their claim, the Court of Federal Claims could provide full relief on that claim. *See Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) ("Tucker Act claims may be made for recovery of monies that the government has required to be paid contrary to law. . . . The Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power."). The APA authorizes judicial review of final agency action only when "there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704. Hence, the fact that the Court of Federal Claims could provide full relief to the Trustees is a second reason why the Trustees cannot rely on the APA as a waiver of sovereign immunity.

obtain that money judgment.  As the courts of appeals have warned on many occasions, "dressing up a claim for money as one for equitable relief will not remove the claim from Tucker Act jurisdiction and make it an APA case."  *Suburban Mortg. Assocs.*, 480 F.3d at 1124; *see also A.E. Finley & Assocs., Inc. v. United States*, 898 F.2d 1165, 1167 (6th Cir. 1990) ("[O]ne cannot circumvent exclusive jurisdiction in the Claims Court by suing simply for declaratory or injunctive relief in a case where such relief would be the equivalent of a judgment for money damages."); *Eagle-Picher Indus., Inc. v. United States*, 901 F.2d 1530, 1532 (10th Cir. 1990) ("'A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States.'") (quoting *Rogers v. Ink*, 766 F.2d 430, 434 (10th Cir. 1985)).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion to dismiss for lack of subject-matter jurisdiction [ECF No. 59] is GRANTED, and this action is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

    2.      Plaintiffs' motion for summary judgment [ECF No. 35] is DENIED AS MOOT.

    3.      Defendant's motion for summary judgment [ECF No. 45] is DENIED AS MOOT.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 26, 2016

    s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge